IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANDREW JOSEPH DICKS, | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. GLR-14-2384 |
| FORMER WARDEN BOBBY P. SHEARIN, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants', former Warden Bobby P. Shearin and Dietary Lt. Michael Yacenech, Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 11), and Plaintiff's, Andrew Joseph Dicks, Motion to Request Judgment on Pleadings (ECF No. 17).  Upon consideration of the pleadings and supporting documents, the Court finds no hearing necessary.  See Local Rule 105.6 (D.Md. 2014).   For the reasons stated below, the Motions will be granted in part and denied in part.

**I.     BACKGROUND**[1]

Plaintiff is a Muslim inmate housed at North Branch Correctional Institution ("NBCI").  In 2013, Ramadan was scheduled to start on July 9, 2013, and end on August 7, 2013.  On July 22, 2013, Plaintiff's filed an Administrative Remedy Procedure grievance ("ARP") claiming he was not receiving adequate nutrition during Ramadan, including juice and other items at breakfast and a double portion of the dinner meal, which was received by the Institutional Coordinator at NBCI.  The normal process for distribution of food is altered during Ramadan, to accommodate the Muslim practice of fasting from sunrise to sunset.  In 2013, NBCI prisoners participating in Ramadan were

---

[1] Unless otherwise noted, the following facts are taken from the Complaint and the parties' briefings on the Motion.  The facts are viewed in a light most favorable to Plaintiff.

afforded an opportunity to eat a regular breakfast before sunrise, were not provided lunch, and were to be provided "an enhanced dinner served at sunset." The enhancement was to include "the lunch vegetable and dessert item," but did not include all of the items in the complete lunch provided to non-fasting prisoners.

NBCI Dietary Supervisor Yacenech was assigned to investigate the ARP complaint.[2] (ECF No. 11-9). On July 31, 2013, Yacenech explained to Plaintiff that, during Ramadan, participating prisoners were expected to fast during the day, and would receive the same dinner tray as the general population and the next day's breakfast tray after sunset. (Id.). On August 6, 2013, Yacenech submitted his investigative report recommending the ARP be dismissed as meritless. (Id.). On August 13, 2013, Shearin, former Warden of NBCI, dismissed the ARP. (Id.).

Plaintiff appealed this decision, claiming that he was supposed to receive the same calories and food as general population prisoners even while observing Ramadan, and that he had lost weight. (Id.). On October 11, 2013, Randy Watson, Director for Programs and Services, informed Shearin that Plaintiff's ARP appeal was meritorious, and that dietary officials were to adhere to policy during Ramadan. (Id.).

Plaintiff filed a grievance with the Inmate Grievance Office ("IGO") concerning the insufficient food provided during Ramadan, which culminated in a May 7, 2014 hearing before Administrative Law Judge ("ALJ") Harriett C. Helfand. (ECF No. 1-1). The ALJ found that Division of Correction ("DOC") personnel agreed with Plaintiff that those who fasted during Ramadan were entitled to the equivalent of three meals per day. The ALJ determined that Plaintiff was not entitled to financial compensation because he suffered no illness or malnutrition as a result of not being served lunch.[3] (Id.).

---

[2] Yacenech did not oversee the preparation of the breakfast and dinner meals provided to inmates participating in Ramadan in 2013. (ECF No. 11-4).

[3] The ALJ's decision states:

2

On July 24, 2014, Plaintiff filed this action asserting that Defendants acted with "deliberate indifference" when they ignored his ARP asking that he be given additional food at dinner to make up for calories lost during Ramadan.  Plaintiff complains that Defendants violated his First Amendment free exercise rights, his Fourteenth Amendment equal protection rights, and his Eighth Amendment rights against cruel and unusual punishment and deliberate indifference.  (Id.).  In his Opposition to Defendants' Motion, Plaintiff raises a further claim that Defendants violated his rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").  (ECF No. 13).  Plaintiff seeks money damages, alleging he suffered hunger pains, weight loss of over 10 pounds, and mental and emotional anguish.  (ECF No. 1).

## II.   DISCUSSION

### A.  Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the

---

> The Grievant did not show that DOC officials acted out of malice when they only fed him breakfast and dinner meals during Ramadan, which was thought to be in conformity with religious practice at the time.  Since his initial grievance, however, the DOC has amended its policy and has agreed to provide additional food to inmates observing Ramadan during the dinner meal of the observance.  Although the Grievant has not proven his entitlement to monetary damages in this matter, perhaps he can take some comfort in the fact that his efforts have succeeded in enlightening the institution and encouraging it to alter its dietary measures for him and all other inmates who observe Ramadan.

(ECF No. 1-1).

complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

"When matters outside the pleading are presented to and not excluded by the court, the [12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260-61 (4th Cir. 1998) (quoting Fed.R.Civ.P. 12(d)).  Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court must draw all justifiable inferences in the non-moving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson, 477 U.S. at 247-48.

A "material fact" is one that might affect the outcome of a party's case.  Id. at 248; see JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)).  Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265.

Here, because the Court will consider matters outside of the pleading, Defendants' Motion will be construed as a Motion for Summary Judgment.

B. <u>Analysis</u>

   1. **Immunity**

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989) (citing <u>Brandon v. Holt</u>, 469 U.S. 464, 471 (1985)). Thus, Plaintiff's constitutional claims against Defendants in their official capacities will be dismissed.

Similarly, Defendants are not subject to suit for monetary damages under RLUIPA. <u>See</u> <u>Lovelace v. Lee</u>, 472 F.3d 174, 193 (4th Cir. 2006) (citing <u>Madison v. Virginia</u> (<u>Madison II</u>), 474 F.3d 118, 133 (4th Cir. 2006)). This statute does not authorize a private cause of action for money damages against prison personnel for actions taken in their official capacities, because they have immunity against such claims under the Eleventh Amendment. <u>Sossamon v. Texas</u>, 131 S.Ct. 1651, 1660 (2011); <u>Madison</u>, 474 F.3d 118, 133 (4th Cir. 2006). Likewise, Plaintiff cannot assert RLUIPA claims for money damages against Defendants in their individual capacities. <u>Rendelman v. Rouse</u>, 569 F.3d 182, 189 (4th Cir. 2009). Consequently, because Plaintiff only seeks money damages, the Court will dismiss all of Plaintiff's RLUIPA claims against Defendants.

   2. **Affirmative Defenses**

Defendants raise two affirmative defenses. First, Defendants assert entitlement to qualified immunity, arguing that their conduct is not actionable unless "'in the light of preexisting law[,] the unlawfulness' of the actions is apparent." <u>Iko v. Shreve</u>, 535 F.3d 225, 238 (4th Cir. 2008) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)). It is true that the Court cannot require prison officials to possess "the legal knowledge culled 'by the collective hindsight of skilled lawyers and learned judges,' but instead only 'the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct.'" <u>Johnson v. Caudill</u>, 475 F.3d 645, 650 (4th Cir. 2007) (quoting <u>Jackson v. Long</u>, 102 F.3d 722, 731 (4th Cir. 1996)). The existence of a policy

providing for equivalent food intake, as well as the First Amendment rights invoked in this matter, were clearly established in 2013. Thus, Defendants cannot claim qualified immunity here.

Second, Defendants argue that the allegations against them are based solely on supervisory liability under the doctrine of respondeat superior, and thus cannot proceed. This argument overlooks Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), which allows a supervisor to be held liable where (1) the supervisor had actual or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to another, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Yacenech demonstrates he did not supervise the preparation of the breakfast and dinner meals provided to inmates participating in Ramadan in 2013. (ECF No. 11-4). Yacenech merely conducted the investigation of Plaintiff's ARP. Plaintiff has failed to dispute this fact. As such, the Court finds that Plaintiff has failed to demonstrate Yacenech's supervisory liability.

Conversely, the Court finds Shearin may have had constructive knowledge of the existing DOC's policy and of NBCI officials' failure to adhere to the policy. Due to Shearin's failure to inform the dietary officials of the policy, Plaintiff's First Amendment rights may have been violated throughout Ramadan in 2013. The Court, therefore, finds that a dispute of material fact exists as to Shearin's actual deliberate indifference. Accordingly, the Court will deny Defendants' Motion as to supervisory liability without prejudice at this stage in the litigation, and Plaintiff's Motion will be denied.

   3. **The First Amendment**

"[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (quoting Price v. Johnston, 334 U.S. 266, 285

(1948)). Prison inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. See Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972). That retained right, however, is not unfettered. Prison restrictions that impact the free exercise of religion but are related to legitimate penological objectives do not run afoul of the Constitution. See Turner v. Safely, 482 U.S. 78, 89-91 (1987). The test to determine if the restrictions are justified requires examination of whether there is a rational relation between the asserted governmental interest and the regulation in question. In addition, this Court must examine: whether there are alternative means of exercising the right asserted; whether accommodation of the right will impact on the orderly operations of the prison; and whether readily available alternatives to the regulation would be less restrictive. Id. at 88-90; see also Holt v. Hobbs, 135 S.Ct. 853, 865-67 (2015) (stating available alternatives existed to permit religious beards). In order to survive summary judgment for the First Amendment claim, Plaintiff must demonstrate Shearin's conduct substantially burdened his religious exercise. Whitehouse v. Johnson, No. 1:10cv1175, 2011 WL 5843622, at *5 (E.D.Va. Nov. 18, 2011).

Celebrating Ramadan and engaging in fasting during the day as part of Ramadan constitute a religious exercise. Lovelace, 472 F.3d at 187. The United States Court of Appeals for the Fourth Circuit has determined a substantial burden

> is one that put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or one that forces a person to choose between following the precepts of h[is] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of h[is] religion . . . on the other hand.

Couch v. Jabe, 679 F.3d 197, 200 (4th Cir. 2012) (alteration in original) (quoting Lovelace, 472 F.3d at 187). No substantial burden occurs if the government action merely makes the "religious exercise more expensive or difficult," but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his or her religion. Living Water Church of God v. Charter Twp. of Meridian, 258 F.App'x 729, 739 (6th Cir. 2007).

In 2013, the DOC's policy was to provide prisoners observing Ramadan with meals consisting of a daily caloric intake similar to meals given to non-observing prisoners. NBCI officials did not follow this policy. Plaintiff claims Shearin's failure to adhere to the DOC's policy of providing sufficient calories to inmates fasting imposed a substantial burden on his ability to fast. Plaintiff asserts, during Ramadan in 2013, he lost over ten pounds, experienced emotional and mental anguish, suffered hunger pains, and endured stress. Further, Plaintiff argues that the reduction in calories was not required by his beliefs. Shearin, however, has not explained how failure to follow the policy is of no legal consequence.[4]

The Court finds, at this point in this litigation, Shearin's failure to follow the DOC's policy may have substantially burdened Plaintiff's religious practice because Plaintiff faced a choice of eating insufficient calories and suffering weight loss and discomfort or violating his religious beliefs by not fasting during Ramadan to obtain sufficient caloric intake. Further, Shearin has not shown that failure to follow the DOC policy was the least restrictive alternative. Shearin fails to recognize that the policy itself provided the "least restrictive alternative" (by providing adequate nutrition) and was designed to accommodate both an important religious observance and the orderly operation of the prison. The Court, therefore, finds that Shearin is not entitled to summary judgment and will deny Shearin's Motion as to the First Amendment claim without prejudice.

4. **The Eighth Amendment**

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment in violation of the Eighth Amendment. Rhodes v. Chapman, 452 U. S. 337, 347 (1981). Conditions which are merely restrictive or harsh, however, "are part of the penalty that criminal offenders pay for their offenses against society." Id. The

---

[4] The law is settled that the failure to follow a prison directive or regulation does not typically give rise to a federal claim if constitutional minima are met. See Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996). Here, however, the violation of an established policy had a direct impact on Plaintiff's exercise of First Amendment rights.

Eighth Amendment imposes a duty on prison officials to provide inmates with well-balanced meals, containing sufficient nutritional value to preserve health. See Wilson v. Johnson, 385 F.App'x 319, 320 (4th Cir. 2010) (citing cases for proposition that Eighth Amendment requires nutritionally adequate food); see also Farmer v. Brennan, 511 U.S. 825, 833 (1994).

In order to establish a claim for cruel and unusual punishment and deliberate indifference, a prisoner must prove that objectively the deprivation of a basic human need was sufficiently serious, and that subjectively those responsible acted with a sufficiently culpable state of mind. Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). The objective prong of a conditions claim requires proof of an injury. "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of a serious or significant physical or emotional injury resulting from the challenged conditions. See Odom v. S.C. Dep't of Corr., 349 F. 3d 765, 770 (4th Cir. 2003).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. See Wilson, 501 U. S. at 298. In other words, Shearin must have known that Plaintiff faced a serious danger to his safety that could have been averted easily, and failed to act. Brown v. N.C. Dep't of Corr., 612 F.3d 720, 723 (4th Cir. 2010); Case v. Ahitow, 301 F.3d 605, 607 (7th Cir. 2002). Conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly-established pre-existing law. See Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992).

Plaintiff argues Shearin violated his Eighth Amendment rights by failing to provide sufficient food during Ramadan in accordance with the DOC's policy. As to the objective prong, the parties

have submitted medical records demonstrating that, prior to the start of Ramadan, Plaintiff weighed 193.7 pounds and, on July 25, 2013, he weighed 194 pounds; however, on July 27, 2015, he weighed 184.6 pounds, constituting a loss of 9.4 pounds.  (ECF No. 11-7).  Plaintiff also asserts that he experienced stress, emotional and mental anguish, and hunger pains.

As to the subjective-prong, Plaintiff states that he complained of NBCI official's failure to abide by the DOC's policy and Yacenech responded to the complaint, stating fasting prisoners were to receive the same unenhanced dinner as the general population.  Yacenech then informed Shearin that the complaint should be dismissed as meritless and Shearin dismissed it despite the DOC's policy.  A defendant's subjective knowledge "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  Farmer, 511 U.S. at 842 (citation omitted).

A plaintiff can make a prima facie case by showing "the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it . . . ."  Id.  Plaintiff has shown that DOC implemented a policy to ensure fasting inmate received adequate calories and NBCI officials, including Shearin, failed to follow it.  The Court, therefore, finds Shearin is not entitled to summary judgment regarding deliberate indifference. The Court will, therefore, deny Shearin's Motion as to the Eighth Amendment claim without prejudice.

   5. **Equal Protection**

Plaintiff also claims Defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment by discriminating against him because he is Muslim.  The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.  The Equal Protection Clause keeps governmental decision-makers from treating differently persons who are in all relevant aspects

alike.  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

In order to successfully state an equal protection claim, a plaintiff first must demonstrate that he has been "treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."  Morrison, 239 F.3d at 654.  Once such a showing is made, the court must then determine whether the disparity in treatment can be justified under the requisite level of scrutiny.  See City of Cleburne, 473 U.S. at 439-40; In re Long Term Admin. Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 471 (4th Cir. 1999).

Here, Plaintiff demonstrates that he and other fasting inmates were treated differently from the general population inmates because the fasting inmates received fewer calories than the general population in violation of the DOC's policy.  However, it is clear that the two groups of inmates were not similarly situated in that the general population inmates were not fasting and did not require specialized meals.  The Court, therefore, finds Shearin is entitled to summary judgment and will grant his Motion as to the equal protection claim.

6.  **Damages**

Plaintiff requests compensatory and punitive damages.  A plaintiff who demonstrates a violation of a constitutional right is not entitled to compensatory damages unless he can prove actual injury caused by the violation.  See Carey v. Piphus, 435 U.S. 247, 264-66 (1978).  Although damages based on the "abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages," Memphis Cty. Sch. Dist. v. Stachura, 477 U.S. 299, 310 (1986), injury to an interest protected by the First and Eighth Amendment can itself constitute compensable injury wholly apart from emotional distress and anguish suffered by the plaintiff.  Piver v. Pender Cnty. Bd. of Ed., 835 F.2d 1076, 1082 (4th Cir. 1987).

While Plaintiff lost weight and suffered discomfort during his religious fast, Plaintiff has not established any personal financial damage from Shearin's violation of the DOC's policy. Nonetheless, the Court will defer to a jury to resolve the factual questions of injury and damages resulting from the potential violation of his First and Eighth Amendment rights.  Also, a punitive award may accompany either a nominal award or a substantial compensatory award.  Piver, 835 F.2d at 1082.  Accordingly, Plaintiff must prove an entitlement to damages to a jury.

### III.   CONCLUSION

For the reasons stated above, Defendants' Motion, construed as a motion for summary judgment, (ECF No. 11) is GRANTED in part and DENIED without prejudice in part.  Plaintiff's Motion to Request Judgment on the Pleadings (ECF No. 17) is DENIED.[5]  Plaintiff's claims against Defendant Dietary Lt. Michael Yacenech are DISMISSED.

A separate Order follows.

Entered this 28th day of September, 2015

/s/
_____
George L. Russell, III
United States District Judge

---

[5] Plaintiff's request for appointment of counsel is GRANTED.